John LOPEZ and Irene Lopez, Plaintiffs,

v.

William MODISITT, and other unknown federal officers, John Bayliss, individually and in his capacity as Supervisor of the Metropolitan Narcotics Squad, other unknown officers of the Lansing Metropolitan Narcotics Squad, Thomas O'Toole, individually and in his capacity as Chief of Police of the City of Lansing, Defendants.

No. G75–279CA5.

United States District Court,
W. D. Michigan, S. D.

April 4, 1980.

H. Eugene Bennett, Lansing, Mich., for plaintiffs.

J. Terrance Dillon, Asst. U. S. Atty., Grand Rapids, Mich., for defendants.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This action arises out of an alleged false arrest and assault of plaintiffs John and Irene Lopez by defendant William Modisitt, along with members of the Lansing Metro Squad pursuant to an arrest warrant issued by Honorable Stephen W. Karr.

Defendant Modisitt alone has requested this Court to dismiss the Lopez cause of action pursuant to Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure.

The plaintiffs allege in Count II a violation of their Fourth Amendment rights as guaranteed by the Constitution for the unlawful arrest. This count is premised on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which allowed civil actions against federal officers for violations of Fourth Amendment rights pertaining to unreasonable searches and seizures without an arrest warrant. The defendant Modisitt contends that because of the recent decision of *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), there is no constitutional tort in this case. The Court agrees with this position.

The fact situation in *Baker* closely parallels the case now before this Court. *Baker* involved a civil rights action brought against a county sheriff and his surety for false imprisonment. The plaintiff had been arrested pursuant to a valid arrest warrant and was detained in jail for three days despite his protest of mistaken identity. Following his release, plaintiff filed suit claiming his detention in jail had deprived him of "liberty without due process of law" under 42 U.S.C. § 1983. The Supreme Court held that plaintiff "failed to satisfy § 1983's threshold requirement that the plaintiff be deprived of a right 'secured by the Constitution and laws,' and hence had no claim cognizable under § 1983." The *Baker* court stated:

> Absent an attack on the validity of the warrant under which he was arrested, respondent's claim is simply that despite his protests of mistaken identity, he was detained in the Potter County Jail from December 30, when Potter County deputies retrieved him from Dallas, until January 2, when the validity of his protest was ascertained.
>
> . . . . .
>
> Respondent's innocence of the charge contained in the warrant, which relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested.

The court concluded that "mere detention pursuant to a valid warrant" of three days did not deprive plaintiff of "liberty without due process." Nor was the officer required under the Constitution to investigate claims of innocence when a warrant had been issued on probable cause. Any duty to exercise reasonable due diligence arises out of tort law, not under Section 1983 which imposes liability for violations of rights protected by the Constitution. "The tort of false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id.* at p. 2696. Therefore, plaintiff had no claim under Section 1983.

Similarly, comparing the *Baker* case with the present case, this Court concludes that Lopez does not have a claim for a deprivation of rights protected by the United States Constitution. As required in *Baker*, plaintiff does not attack the validity of the

warrant. Lopez states that the warrant was valid, but was executed against the wrong person. Lopez also states that probable cause for the warrant and Modisitt's actions in seeking the warrant are not questioned. However, Lopez does accuse defendant of a lack of good faith and reasonable belief in the validity of the arrest which, if acting reasonably, Modisitt should have known was the wrong person. However, these allegations, in the Court's view, may constitute claims for malicious prosecution, rather than due process violations. ·

■ This Court concludes, as the court did in *Baker*, that agent Modisitt in executing a valid arrest warrant is not required by the Constitution to independently investigate every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack ·of requisite intent. Nor was Modisitt required by the Constitution to perform an error-free investigation of such claims. In addition, the liberty interest protected in *Bivens* is a different interest than the one alleged here. *Bivens* involved a deprivation of Fourth Amendment rights due to an illegal arrest and illegal search and seizure. However, this Court concludes that an arrest made pursuant to a valid warrant is not a deprivation of Fourth Amendment rights. Because there was no unconstitutional arrest, a *Bivens* action cannot be maintained under the present fact situation. Therefore, Count II is dismissed.

This Court is requested by Modisitt to dismiss Count III for false imprisonment and Count IV for malicious prosecution. First, Modisitt contends that there is no cause of action for common law false imprisonment when the arrest is made pursuant to a valid arrest warrant. The Fifth Circuit concluded in *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977) as follows:

Common law false imprisonment theory is not applicable to the activity of either the investigation or the arresting agents in this case for several reasons. First and most basically, an arrest made under authority of a properly issued warrant is

simply not a false arrest, it is a true and valid one. Second, if the facts supporting the arrest are put before an intermediate such as a Magistrate or a Grand Jury, the intermediates decision breaks a causal chain and insulates an initiating party. Third, the general rule is that one who is engaged merely in investigatory work is not liable for a resulting false arrest, even if he acted maliciously. p. 1193

The *Rodriguez* court substantiated these conclusions by a thorough examination of the law in the area. In footnote 33 the court cites Prosser, Restatement (Second) of Torts § 45A, Comment (b) (1965) as follows:

In order for this section to be applicable to an arrest, it must be a false arrest, made without legal authority. One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution . . . or for abuse of process, but he is not liable for false imprisonment, since no false imprisonment has occurred.

■ Plaintiff contends that because Modisitt assisted in the procurement of the warrant and the execution of the arrest directly, this constitutes a prima facie case, placing the justification for the arrest upon the defendant. This assertion is unfounded in Michigan. In the case of *Carr v. National Discount Corp.*, 172 F.2d 899 (6th Cir. 1949) the court stated, "The contention that mere arrest establishes a prima facie case of false imprisonment is too broad, notwithstanding some generalizations to that effect in some of the Michigan cases. The plaintiff must also show that the arrest was unlawful." p. 903. The court went on to say, "It is the law of Michigan that one who merely gives information regarding an offense does not incur liability, even though the party giving the information acted maliciously or without probable cause." p. 902.

■ Plaintiff Lopez does not question whether Modisitt was acting within the scope of his employment. At ¶ 8 of his complaint, plaintiff states, "Defendant William Modisitt was a Federal officer within

the Federal Drug Enforcement Administration and acting under authority of Federal law." Modisitt was acting under the authority of a valid arrest warrant obtained from Magistrate Karr. It is the holding in several cases that an officer acting pursuant to a judicially approved warrant valid on its face is protected from a suit for damages arising out of its issuance. *Carroll v. U. S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Walker v. U. S.*, 125 F.2d 395 (5th Cir. 1942). Based on the cited authority, this Court dismisses Count III for false imprisonment.

■ Since no action for false imprisonment will lie, the Court must consider whether plaintiff states a cause of action for malicious prosecution in Count IV. The tort of malicious prosecution requires the elements of malice and lack of probable cause be set out in the pleadings. In his complaint, Lopez alleges . . . that defendant's prosecution of John Lopez was

intentional, unreasonable, malicious and without probable cause in that:

(a) defendants brought criminal charges without reasonable grounds to believe that said plaintiff committed the offense charged

(b) defendant prior to plaintiff's arrest knew or should have known that plaintiff was not the person named on the warrant and had not committed the offense charged

(c) defendants possessed with this knowledge continued with the criminal charge and intentionally or negligently breached their duty to plaintiff by failing to cause or help cause the criminal charge to be dismissed.

The *Rodriguez* court considered this issue citing Prosser, Restatement (Second) of Torts, § 37, Comment b (1965) in footnote 36 as follows: "The tort of abuse of process is clearly inappropriate to the situation presented here, for no one contends that there was an ulterior motive involved in the issuance of the indictment or warrant." However, this Court chooses not to so quickly dispose of Count IV. As was said in *Jones v. Perrigan*, 459 F.2d 81 (1972):

Jones' complaint alleged that *Perrigan* acted willfully, deliberately, wrongfully, knowingly, and illegally and without probable or reasonable cause. These allegations, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. Whether the defense of qualified immunity is available cannot be determined appropriately from the pleadings.

■ The Court's inquiry on a motion to dismiss before the reception of any evidence by affidavit or admission, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliott Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All reasonable inferences which might be drawn from the pleading must be indulged. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir. 1972). This Court concludes that plaintiff has stated a legally sufficient claim for malicious prosecution.

The remaining issue to be decided by this Court is whether to grant defendant's motion for summary judgment. This motion is brought pursuant to Fed.R.Civ.P. 56(c), which provides in relevant part that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ Therefore, to grant summary judgment, the moving party must bear the burden of clearly establishing the nonexistence

of any genuine issue of material fact to a judgment in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device . . . Diapulse*, 527 F.2d 1008, 1011 (6th Cir. 1976).

■ This Court concludes that there are genuine issues of fact which should be best left for a trial on the merits. There is the question of whether the defendant acted maliciously in executing the arrest warrant. Malice is a state of mind and an essential element of this cause and which is to be found by the jury from the evidence in the case. Want of probable cause is the other element of the action which must be proved by the plaintiff. *Turbessi v. Oliver Iron Mine Co.*, 250 Mich. 110, 229 N.W. 454 (1930). Probable cause for a criminal prosecution has been defined as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or prudent man in the belief that the party is guilty of the offense with which he is charged. *Merriam v. Continental Motors Corp.*, 339 Mich. 546 (1954), 64 N.W.2d 691. Both malice and probable cause are subject to development of facts on the record. Although summary judgment may properly be entered in any type of civil action, the Court must be "extremely hesitant to grant summary judgment on important and complex issues" without an adequate factual basis in the record. *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976). Therefore, this Court denies the motion for summary judgment filed by the defendants as to the dismissal of Count IV.

Defendant also contends that this action is subject to dismissal based on Modisitt's absolute immunity from suit. The defendant contends that as to the two common law torts, officer Modisitt has an absolute immunity as announced in *Granger v. Marek*, 583 F.2d 781 (6th Cir. 1978) and *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). This Court does not agree.

The court in *Granger v. Marek*, 583 F.2d 781 (6th Cir. 1978) held that where the complaint alleged that IRS agents had com-

mitted common law torts, not violations of plaintiff's constitutional rights, the doctrine of absolute immunity for *discretionary acts* performed within the scope of their duties applied. It has for some time been the traditional view to say that an officer is not liable if he is exercising discretionary power; that is, the power and duty to make a choice among valid alternatives, he is not held liable in damages even though the choice was beyond his power. If the officer has no discretion, his duties are "ministerial" and he is held liable for failure to perform them. The dichotomy between ministerial and discretionary is unclear. Further, this Court does note that there are areas like actions against police officers for false arrest, battery and trespass where recovery has been allowed despite the exercise by the officer of more than merely ministerial functions.

This Court does not have the benefit of the facts to determine whether Modisitt's actions were an appropriate exercise of the discretion with which an officer of his rank is necessarily clothed in the circumstances of the arrest. In addition, it is not clear whether Modisitt was acting pursuant to ministerial duties. That is, facts have not been developed to show that he was required by law or the direction of his superiors to arrest Lopez, such acts in which only a qualified privilege applies.

■ This Court is not in a position to say that the arrest executed by Modisitt was not an appropriate exercise of discretion. In any event, the doctrine of immunity does not protect a law enforcement officer from an action for malicious prosecution if the particular conduct complained of consisted of acts outside the scope of the officer's official duties or authority. *Jones v. Perrigan*, 459 F.2d 81 (1972).

Further, this Court does not feel that the duties of an IRS agent are sufficiently connected to that of an arresting officer to be of much assistance on the issue of immunity. This Court concludes that the facts in *Granger* dealing with IRS exists for federal officers with regards to common law torts. *Barr* held that a false and damaging publi-

cation within the official's "outer perimeter of his line of duty" was an appropriate exercise of discretion, and was therefore, not actionable even though issued maliciously. The reasons for the recognition of the privilege is that:

It has been thought important that officials of government should be free to exercise their duties unembarrassed by the threat of damage suits in respect of acts done in the course of those duties— suits would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous and effective administration of policies of government.

79 S.Ct. 1339 (1959). However, the absolute privilege of *Barr* has generally been limited to high governmental officers in policy-making decisions.

The Supreme Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) discussed the personal immunity of federal officials in the Executive Branch from claims for damages arising from their violations of citizens' constitutional rights. The suit was filed against a number of officials in the Department of Agriculture claiming that they had instituted an investigation and an administrative proceeding against the plaintiff in retaliation for his criticism of that agency. The *Butz* court agreed with the Court of Appeals for the Second Circuit holding that the agents were not absolutely immune, but that the public interest would be sufficiently protected by according the agents and their superiors a qualified immunity. The court stated that neither *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) nor *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896) purports:

to abolish the liability of federal officers for actions manifestly beyond their line of duty; and if they are accountable when they stray beyond the plain limits of their statutory authority, it would be incongruous to hold that they may nevertheless willfully or knowingly violate constitutional rights without fear of liability.

The *Butz* court in discussing *Barr* stated:

*Barr* did not, therefore, purport to depart from the general rule, which long prevailed, that a federal official may not with impunity ignore the limitations which the controlling law has placed on his powers. However, where the officer ignored express statutory or constitutional limitations on his authority, he could be held strictly liable for his trespassory acts.

438 U.S. 489, 495 (1978), 98 S.Ct. 2902 (1978).

The immunity of federal executive officials began as a means of protecting them in the execution of their federal statutory duties from criminal or civil actions based on state law. *See Osborn v. The Bank of the United States*, 9 Wheat. 738, 865–866 [22 U.S. 738, 6 L.Ed. 204] (1824) [where] Chief Justice Marshall explained:

An officer, for example, is ordered to arrest an individual. It is not necessary, nor is it usual, to say that he shall not be punished for obeying this order. His security is implied in the order itself. It is not an unusual thing for an act of Congress to imply, without expressing, this very exemption from State control . . . The collections of the revenue, the carriers of mail, the mint establishment, and all those institutions which are public in their nature, are examples in point. It has never been doubted that all who are employed in them are protected while in the line of their duty; and yet this protection is not expressed in any act of Congress. It is incidental to, and is implied in, the several acts by which those institutions are created; and is secured to the individuals employed in them by the judicial power alone . . .

Footnote 14, 438 U.S. 489, 98 S.Ct. 2902 (1978).

The *Butz* court went on to say that "without congressional directions to the contrary," it would be untenable to draw distinction for purposes of immunity law between suits brought against state officials under 42 U.S.C. § 1983, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40

L.Ed.2d 90 (1974) and suits against federal agents authorized by *Bivens.* "Federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers." While the court allowed a qualified immunity as specified in *Scheuer*, it warned the federal courts to be alert to artful pleading and dispose of insubstantial lawsuits by summary judgment, or motions to dismiss.

 Considering the case discussed above, this Court holds that defendant Modisitt is *not immune from suit*, but is subject to the same qualified immunity articulated in *Scheuer.* That is to say, that the federal officer involved must bear the burden of showing that he should be exempt from suit. This involves a factual determination. As was stated in *Butz* :

> *Scheuer* and other cases have recognized that it is not unfair to hold liable the official who knows or should know that he is acting outside the law and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment. We therefore hold that, in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer*, subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business.

98 S.Ct. 2911 (1978).

This Court does not have facts before it to determine whether the conduct was proper, that Modisitt's belief that he was arresting the right John Lopez was reasonable—whether he believed he was acting in the good faith belief that his conduct was proper.

In *Jones v. Perrigan*, 459 F.2d 81 (6th Cir. 1972), an FBI agent arrested the plaintiff pursuant to an arrest warrant procured allegedly by the execution of perjured affidavits. The plaintiff initiated a civil action against the agent seeking damages for alleged false imprisonment and malicious prosecution. The district court dismissed the cause on the basis that the officer was immune from liability. The Sixth Circuit reversed, stating:

> We disagree with the basis of the decision of the District Court. As a matter of public policy, certain officials are absolutely immune from liability for acts committed within the scope of their office, even if the acts were corrupt or malicious. *See e. g., Tenny v. Brandhove*, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951) (legislators); *Bradley v. Fisher*, 80 U.S. (13 Wall) [20 L.Ed. 646] (1971) (judges). The immunity of law enforcement officers from false arrest liability is a qualified one in the nature of an affirmative defense. Immunity is available only if the officer acted in good faith with probable cause.

In light of *Jones*, this Court concludes that Count IV for malicious prosecution should not be summarily dismissed without an opportunity for plaintiff to offer supporting evidence. Likewise, this Court is not satisfied that the defendant's entitlement to qualified immunity in the instant case can summarily be established. The applicability of this immunity is dependent upon factual findings as was stated in *Jones*.

Therefore, defendant's motion to dismiss on the basis of absolute immunity is denied.

IT IS SO ORDERED.