**Pedro Savala LOPEZ and Mary Lou Lopez, Plaintiffs,**

**v.**

**Detective Sargent Gary RUHL, Forrest (Nick) Jewell, and the Berrien County Sheriff's Department, Defendants.**

**No. K 83–156.**

United States District Court, W.D. Michigan, S.D.

April 6, 1984.

---

Sally Zack Wheeler, Wheeler & Wheeler, P.C., Alistair J.H. Smith, Barnard & Smith, P.C., Kalamazoo, Mich., for plaintiffs.

Thomas E. Nelson, Asst. Pros. Atty., St. Joseph, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This is a civil rights action arising out of the arrest and detention of Plaintiff Pedro Lopez in 1982. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343. Plaintiffs cite the Fourteenth Amendment, 42 U.S.C. §§ 1983, 1985 and 1988 as the substantive basis of their due process claims. (Complaint, ¶ 4). In this opinion the Court takes up Defendants' motion for summary judgment, filed March 8, 1984.

Many of the material facts are not disputed. On July 24, 1982 Ronald Peach and Roy Lucas escaped from the Berrien County jail, where Plaintiff Pedro Lopez ("Lopez") was also incarcerated. The bars on the escapees' cells had been cut; Peach and Lucas had then proceeded down a walkway (to which trusties had access but the general population did not), broke through a window, and ultimately escaped by climbing across a barbed wire fence. An investigation conducted by Defendant Ruhl, a deputy detective for the Berrien County Sheriff's Department, included interviews of all of the inmates in the area of the jail from which the break occurred. At first no one implicated Lopez. Two days after the breakout, however, inmate Matthew Osby changed his story, and told Ruhl that he had seen a Mexican trusty assist Peach and Lucas in their escape. By July 29, Ruhl had learned that Lopez was the only Mexican trusty on that floor of the jail, and in a third interview, Osby again described in some detail Lopez' role in the escape. Lopez denied any involvement, and agreed to take a polygraph examination. A polygraph was administered on July 27, and the examiner concluded that Lopez was deceptive in denying his participation in the jail break.

On July 29, Ruhl went to the assistant prosecutor for authorization, and then obtained from a magistrate a warrant for Lopez' arrest on charges of aiding in the escape. Lopez was arrested and segregated from the rest of the prison population and denied visitors for some three weeks, until a thorough search of the jail had been conducted, and the escapees had been apprehended. On August 10, 1982 a preliminary examination was held, at which Lopez was represented by counsel. After hearing testimony by both Ruhl and Osby, the State District Judge found that there was probable cause to believe that Lopez had aided the escape, and bound Lopez over to the Circuit Court. Bail was continued at $10,000, and because Lopez was unable to pay the required ten percent cash, he remained incarcerated at the Berrien County jail, until a nolle prosequi order was signed on November 24, 1982 at the request of the prosecuting attorney. Had Lopez not been arrested on the escape charge, he would have been released as early as mid-August.

Plaintiffs filed this action in April 1983, alleging that the actions of Defendants Ruhl, Sheriff Forrest Jewell, and the Berrien County Sheriffs Department deprived Lopez of his liberty without due process of law. Specifically, Plaintiffs allege,

> [t]hat despite the multitude of statements and information which was known or should have been known to said Defendant RUHL, his supervisor and fellow investigator, FORREST JEWELL, who were in charge of said investigation and to the BERRIEN COUNTY SHERIFF'S DEPARTMENT, said Defendants requested that a Warrant be issued against PEDRO LOPEZ, charging him with a seven year felony, and against the aforesaid individuals, Peach and Lucas who had escaped from said jail, with misdemeanors. (Complaint, ¶ 13).

According to the Complaint, Lopez continually protested his innocence and cooperated with the police, and his attorney made repeated requests for further investigation. Plaintiffs allege that no further investigation was done, despite Plaintiff's requests and requests of the prosecuting attorney; notwithstanding an obligation on the part of the Defendants to promptly insure that the charges were proper; and despite the fact that they knew or should have known the information against Lopez was highly suspect. Plaintiffs allege,

> [t]hat said Defendants knew, or should have known, that there was no substance to any of the charges brought by them against Plaintiff PEDRO SAVALA LOPEZ, but rather acted in a willful, wanton, reckless and/or malicious manner to deny PEDRO SAVALA LOPEZ his freedom. (Complaint, ¶ 22).

The Complaint also contains allegations that Defendants were negligent and/or grossly negligent in bringing the charges against Lopez, causing his continued incarceration, in opposing his release on bond, and in failing to timely investigate information available to them which would have demonstrated that their sole witness against Lopez—Osby—had lied.

Lopez alleges that as the result of Defendants' actions, he was deprived of his liberty, first by being put in solitary confinement for some 21 days, and then by his continued incarceration; was unable to make bond; was prevented from working; and that his good name was harmed, affecting his ability to obtain work upon his release. Plaintiff Mary Lou Lopez claims that she was denied the support and companionship of her husband while he was in jail and as the result of his inability to find work after his release. She also claims she was denied the right to see and visit with her husband while he was in solitary, and had to assume the full responsibility for their eight children. Together, the Plaintiffs seek an award against the Defendants jointly and severally, in the amount of $500,000, plus interest, costs and attorneys fees.

In their motion for summary judgment, Defendants argue that the Complaint fails to allege any Constitutional deprivation; that the Berrien County Sheriff's Department is not a legal entity capable of being sued under § 1983; that no cognizable claim is stated against Defendant Jewell; and that Plaintiff Mary Lou Lopez has failed to state any claims subject to federal jurisdiction. Defendants rely on affidavits submitted by Defendants Ruhl and Jewell, and by jail administrator Hass; Lopez' deposition; the Complaint and Arrest Warrant (Exhibit A); and the transcript of the preliminary examination (Exhibit B). Plaintiffs rely mainly on Defendant Ruhl's deposition, and Ruhl's investigation report, which they have attached to their memorandum in opposition to Defendants' motion.

At the outset, I note that nowhere in the Complaint do Plaintiffs allege conspiracy, discrimination and invidious class-based discriminatory animus. These are essential elements to a claim under § 1985(3), even assuming a deprivation of a right under the Constitution or federal law. See Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Therefore the Court views the rather ambiguous complaint in this case as asserting claims solely under

§ 1983, for violations of the due process clause of the Fourteenth Amendment.

### Deprivation of a Constitutional Right

Section 1983 provides a cause of action against one who under color of State law "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." As the Supreme Court has noted, "[t]he first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *see Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

■ Defendants argue that because Lopez' arrest was pursuant to a valid warrant issued upon the probable cause determination of an independent magistrate, Lopez was not deprived of his liberty without due process. Similarly, Defendants urge that Lopez' continued incarceration was in accord with due process, since a second judge made a second probable cause finding at Lopez' preliminary examination. Defendants are correct in asserting that where no challenge is made to the validity of the arrest warrant, the incarceration of an individual, even though innocent, is generally not constitutionally infirm. *Baker v. McCollan, supra; Lopez v. Modisitt*, 488 F.Supp. 1169 (WD MI 1980).

In *McCollan*, the plaintiff's brother had been arrested and had used a duplicate of plaintiff's driver's license (with the brother's own picture replacing that of plaintiff on the license) for identification. The brother was released on bond, but a warrant was issued for his arrest when his surety recalled the bond. When the plaintiff was stopped for a traffic matter, he was arrested on the warrant. Despite his protests of mistaken identity, plaintiff was kept in jail for several days, until a photo comparison was made and the police learned of their error. The Supreme Court noted that there was no claim that plaintiff was arrested pursuant to an invalid warrant; rather, plaintiff's claim was for the intentional failure of the police to investigate. The Court held that although plaintiff might have a State tort claim, the circumstances did not give rise to a claim under § 1983 for a deprivation of liberty without due process of law. The Court noted that,

> [g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury. 443 U.S. at 145–146, [99 S.Ct. at 2694–2695].

The continued detention of the plaintiff, like the arrest, was within the bounds of due process.

> Since an adversary hearing is not required, and since the probable-cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial. 443 U.S. at 143, [99 S.Ct. at 2694].

■ To the extent that Plaintiffs' claims in this case are simply that the Defendants failed to conduct an investigation that would have demonstrated Lopez' innocence, I find that no unconstitutional deprivation of liberty occurred. *Baker v. McCollan, supra; Lopez v. Modisitt, supra.* I note that this is not a case where investigation was altogether lacking, or where a simple check would have clearly indicated that a mistake had been made.

However, a liberal reading of the Plaintiffs' complaint, together with their memorandum in opposition to this motion, convinces me that their allegations go beyond claims of a failure to investigate. In their brief, Plaintiffs observe that the sole basis for the arrest warrant was Ruhl's hearsay report of statements made by inmate Matthew Osby, about whom there was no indication of reliability, and who in fact had changed his story within the space of two days. They point out that the only other information incriminating Lopez was his failure of the polygraph examination, a fact they urge should be deemed inherently unreliable. Plaintiffs contend there was no corroboration of any of Osby's story, and that the information conveyed to the magistrate by Ruhl was minimal and one-sided.

■ The Complaint charges that Defendants knew or should have known that there was no substance to any of the charges brought by them, and that they acted in a willful, wanton, reckless and/or malicious manner to deny Lopez his freedom. The Complaint also alleges that the Defendants requested a warrant, "despite the multitude of statements and information which was known or should have been known to [them]." (¶ 13). These allegations, although clumsy and somewhat ambiguous in terms of a precise claim, serve to challenge the probable cause underlying Lopez' arrest. Where an arrest is pursuant to an invalid warrant, and without probable cause, a claim cognizable under § 1983 may be alleged. *Powe v. City of Chicago,* 664 F.2d 639 (C.A. 7 1981); *see Garris v. Rowland,* 678 F.2d 1264 (CA 5 1982), *cert. den.,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121. Thus, a further review of the facts is required in order to determine whether summary judgment is appropriate.

The Criminal Complaint and Arrest Warrant, attached to the Defendants' motion as Exhibit A, do not provide any indication of the facts upon which the magistrate (or the assistant prosecuting attorney) evaluated probable cause.[1] Defendant Ruhl's affidavit in support of the present motion merely states that,

> although the majority of those interviewed failed to implicate Pedro Lopez in the escape, the statements of Matthew Osby directed attention to Pedro Lopez which information was presented for authorization to a Berrien County Assistant Prosecutor and then to a Fifth Judicial District Court Magistrate who thereupon issued an arrest warrant for Pedro Lopez on charges of aiding the escape. (¶ 8).

Viewing the facts in the light most favorable to the Plaintiffs, it appears that the only information Ruhl provided to the magistrate was Osby's statement, and possibly also the fact that Lopez had failed a polygraph examination.[2]

■ Plaintiffs do not contend that that information standing alone did not supply probable cause for the arrest warrant, but rather that if other information had been provided, the warrant should not have issued. Generally, a facially valid warrant may not be challenged. But the Supreme Court has held that where a false statement was included by the affiant in a warrant affidavit, knowingly and intentionally or with reckless disregard for the truth, and where the misstatement was necessary to a finding of probable cause, the warrant may be voided. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This same rationale permits an attack on warrants obtained by *omissions* of facts which would affect the probable cause determination. *See United States v.*

---

1. Under Michigan law, the magistrate's finding of "reasonable cause" may be based upon sworn testimony or the affidavit of the complainant or others, as well as on factual allegations contained in the complaint. MCLA 764.1a(2). However, the record before the Court at this time does not disclose what facts were presented, or by what method.

2. The Court has discovered no cases in which the results of a polygraph voluntarily undertaken by an individual under suspicion were used to support a probable cause finding. In the context of this case, I believe that the results of Lopez' polygraph could carry some slight weight in the evaluation of Osby's account of Lopez' role in the escape, although standing alone it does not provide probable cause.

*Lefkowitz,* 618 F.2d 1313, 1317, n. 3 (CA 9 1980); *United States v. Dennis,* 625 F.2d 782 (CA 8 1980). Thus if Defendant Ruhl intentionally, knowingly or recklessly made material omissions in his showing to the magistrate, probable cause may be challenged, and if found lacking, liability may lie under § 1983. *Appletree v. Hartford,* 555 F.Supp. 224 (D Conn 1983); *see Jones v. Perrigan,* 459 F.2d 81 (CA 6 1972).

At his deposition, Ruhl testified that on July 24, he had spoken to an inmate named Anthony Porter, and that Porter told Ruhl that he saw the jailbreak. On July 29, the same day Ruhl obtained the arrest warrant for Lopez, Porter told Ruhl that he did not see Lopez anywhere near at the time of the escape. (Dep 10). On July 28, Ruhl spoke to Peach, who had been recaptured, and Peach likewise told him that Lopez had not been involved in the escape. (Dep 12). Ruhl also testified that when Osby changed his story to implicate Lopez, Osby had asked that the Prosecutor be contacted in reference to his testimony or cooperation (Dep 19). Ruhl concedes that the only thing allowing him to obtain an arrest warrant was Osby's statement, and that he had no verification of the details of Osby's story (Dep 22, 32–33) and no past experience with Osby from which to judge his reliability (Dep 14).[3] Plaintiffs contend that none of this information was conveyed to the magistrate.

According to Ruhl's report, on July 24 Osby told him that he had seen two white males who were not trustees, with metal bars in their hands, walking down the walkway. Osby began yelling for a guard, but stopped when other inmates told him to be quiet. Osby reportedly told Ruhl that he then heard a window breaking, but saw nothing further. Ruhl reports that at Osby's request he spoke to Osby again on July 26. At that time, Osby told him that he had not previously told Ruhl all of what he knew, because he feared for his safety. He told Ruhl that he had seen a Mexican

trusty (Lopez) that morning, carrying a rolled up cloth. The trusty had told him he was helping his "buddies" escape, and had asked Osby to act as a lookout. Osby also told Ruhl that he believed there were some tools of some type in a rolled up cloth carried by the trusty, and that the trusty also used a broom handle in assisting the escapees to break out a window. Osby told Ruhl that for his silence during the breakout, the trusty promised to give Osby a second tray of food at feedings. Ruhl's report indicates that the other inmates were uncooperative when interviewed, and he was apparently able to verify that Lopez was working on the first floor of the jail (where the breakout occurred) at the time of the escape.

 To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 147, 90 S.Ct. 1598; 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (CA 6 1976); *Nunez v. Superior Oil Company,* 572 F.2d 1119 (CA 6 1978); *Tee-Pak, Inc. v. St. Regis Paper Company,* 491 F.2d 1193 (CA 6 1974). If no genuine issue as to any material fact is established, the moving party is entitled to judgment as a matter of law. *Chavez v. Noble Drilling Company,* 567 F.2d 287 (CA 6 1978); *Irwin v. U.S.,* 558 F.2d 249 (CA 6 1977).

 In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the (affidavits, attached exhibits, and depositions) must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed. 176 (1962); *Bohn Aluminum & Brass Corporation v.*

---

**3.** Under the probable cause standard set forth by the Supreme Court in the recent case of *Illinois v. Gates,* —— U.S. ——, [103 S.Ct. 2317], 76 L.Ed.2d 527 (1983), failure to disclose the

basis for relying on a hearsay informant is not necessarily dispositive of the probable cause question, but it remains one factor to be considered in the totality of circumstances.

*Storm King Corporation,* 303 F.2d 425 (CA 6 1962). Even if the basic facts are not disputed, summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, supra; EEOC v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (CA 6 1970). In making this determination, the Court must make reference to the entire record and all well pleaded allegations are to be accepted as true. *Dayco Corporation v. Goodyear Tire and Rubber Company,* 523 F.2d 389 (CA 6 1975); *Holmes v. Insurance Company of North America,* 288 F.Supp. 325 (DC Mich 1968); *Mahler v. US,* 196 F.Supp. 362 (DC Pa 1961).

■ Viewing the Complaint and the facts before the Court under these standards, and giving Plaintiffs the benefit of every favorable inference, I am of the opinion that Plaintiffs should be allowed to present to a jury their claim that the arrest was without probable cause. Inmate Porter's story related in Ruhl's deposition testimony could be interpreted as directly contradicting Osby's version of the events. And different inferences about Osby's credibility could be drawn from Osby's statements. The facts surrounding the story and credibility of both purported witnesses, as known at the time of the arrest, require further development. Moreover, the conflicting stories of the two inmates, and indeed the totality of the circumstances, may give rise to probable cause, or they may not, depending on the facts found and inferences drawn from them.

■ Where there is no dispute as to the facts or circumstances surrounding an individual's arrest, detention and prosecution, probable cause is a question of law for the court. *Banish v. Locks,* 414 F.2d 638 (CA 7 1969). But where reasonable persons might reach different conclusions about the facts, the facts must be determined by the jury, and upon proper instruction about the law, the jury may also determine the existence of probable cause. *Gilker v. Baker,*

576 F.2d 245 (CA 9 1978). In this case, the latter course is necessary.

*Kipps v. Ewell,* 538 F.2d 564 (CA 4 1976), cited by the Defendants, is not to the contrary. There, the plaintiff alleged that probable cause for his arrest was lacking because it was based on the insufficiently credible statement of a fellow inmate, who had said that plaintiff admitted to a murder and had showed the inmate the weapon. The Court found that there was probable cause for plaintiff's arrest, since he did not refute the defendants' affidavits to the effect the arrest was premised also on other sources and additional information. Here, Plaintiffs have raised sufficient factual issues surrounding the finding of probable cause for Lopez' arrest, to preclude summary judgment for the defendants.

Of course, even if Plaintiffs are able to demonstrate a lack of probable cause under all the circumstances known at the time of the arrest, Defendant Ruhl may be insulated from liability since the prosecutor authorized the request for the arrest warrant and is presumed to have exercised his independent judgment. *See Smiddy v. Varney,* 665 F.2d 261 (CA 9 1981). That presumption is rebuttable by evidence that the Defendant made material omissions or gave false information. *See Id.* The record does not disclose what Ruhl told the prosecution. Nor does the record disclose precisely what facts Ruhl presented to the magistrate. For summary judgment purposes, gaps in the record must be resolved in Plaintiffs' favor. At trial, Defendants may be able to convince a jury that probable cause existed, or they may establish a good faith defense. But summary judgment cannot be granted on these issues.

On August 10, a preliminary examination was held, and a second probable cause determination was reached. If in fact there was a proper finding of probable cause at that time, any valid claim proven as the result of the arrest would be extinguished on the date of that finding. However, Plaintiffs have challenged the preliminary examination proceedings on grounds similar to their challenge of the initial arrest.

The transcript of the hearing discloses that Ruhl's testimony went largely to establishing the breakout; Osby was the only other witness. Plaintiffs claim that exculpatory information was withheld by Ruhl at the time of the preliminary examination that would have had an effect on the probable cause finding. Specifically, the record discloses that the facts set forth above which could tend to contradict or discredit Osby's story were not brought to the court's attention at the hearing.

Where an officer withholds exculpatory information from the prosecutor, court and defendant, a § 1983 claim may lie against him, while if the plaintiff's contention is only that he would have evaluated the evidence differently, a claim will not be stated. See Kipps v. Ewell, supra, 538 F.2d at 567 n. 4. See also Hilliard v. Williams, 516 F.2d 1344 (CA 6 1975), vacated 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976), on remand 540 F.2d 220 (CA 6 1976) (State investigative agent's misleading testimony and failure to disclose exculpatory evidence at trial held to be violation of due process where it caused plaintiff's conviction).[1] Again, factual questions concerning the existence of probable cause and the extent of Ruhl's disclosures to the prosecuting attorney, Court, and Lopez, preclude summary judgment.[5]

## Other Claims

Defendants argue that, apart from any considerations of whether Lopez' arrest and detention were in violation of Fourth and Fourteenth Amendment standards, the remaining allegations of the Complaint fail to state any claims under § 1983. Specifically, Defendants refer to what might be construed as a defamation claim, and claims arising out of placement of Lopez in segregation and denial of visitation for a three week period following the breakout. I agree that Plaintiffs' allegations in this regard do not, by themselves, state claims under § 1983 for deprivations of Constitutional rights.

In Paragraph 19 of the Complaint, Plaintiffs allege that publicity released by the Berrien County Sheriff's Department and Defendant Jewell harmed Lopez' good name and affected his employability after his release. Injury to reputation alone does not involve an interest protected by the Constitution. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Clark v. Solem, 628 F.2d 1120 (CA 8 1980).

Moreover, Plaintiff has not contested Sheriff Jewell's affidavit, which states that information released to the media did not go beyond indicating who had been charged with offenses in connection with the escape. (Aff Jewell ¶ 9). Disclosure of that kind of information does not give rise to a § 1983 cause of action. See Becker v. Russek, 518 F.Supp. 1040 (WD Va), aff'd. 679 F.2d 876 (CA 4 1982); and compare Fadjo v. Coon, 633 F.2d 1172 (CA 5 1981) (distinguishing between disclosure of "confidential information" and an official arrest record).

If Lopez' arrest and continued incarceration are found to have been in violation of the Constitution because of a lack of probable cause, then harm to Lopez' reputation may be a relevant consideration in the context of damages, see Marrero v. City of Hialeah, 625 F.2d 499, 513–514 (CA 5 1980), but it does not independently support a claim for relief under § 1983.

4. The Court had initially held the prosecutor liable as well as the agent, but the Supreme Court vacated the judgment in light of its holding on prosecutorial immunity in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). On remand, the Sixth Circuit vacated the judgment as to the prosecutor, but ordered that the judgment against the agent remain in full force and effect.

5. Defendants argue that since Lopez presented no witnesses at the preliminary examination, his continued incarceration is attributable to his own failure to take advantage of the process accorded him. However, Plaintiffs claim that Ruhl made no disclosure of the exculpatory information to Lopez or his attorney, and Ruhl's deposition testimony supports this allegation. (Dep 36). The record does not disclose whether some other source might have disclosed the information to Lopez' attorney.

Defendants assert that the decision to place Lopez in segregation, and to deny him visitation for a three-week period after the breakout, likewise does not give rise to Constitutional challenges. In fact, Lopez appears to allege these facts only as consequences of the underlying arrest and incarceration, not as separate claims. Plaintiffs' memorandum does not address the Defendants' arguments on these points.

In an uncontested affidavit, filed in support of the Defendants' motion, Gerald Hass avers that he is the Administrator of the Berrien County Jail. He states that he was informed that Osby had implicated Lopez in the escape, and that an improvised saw believed to have been used to engineer the escape had not been located. He attests that Lopez was isolated from the rest of the inmate population until the saw was located or the jail thoroughly searched, and until the escapees were captured. Hass states that there was a concern that Lopez might be harmed by other inmates who may have believed that he had implicated them; or that Lopez would take the opportunity to corroborate his story with the other inmates, if he were not segregated. In addition, Hass attests that they sought to prevent any direct or indirect contact between Lopez and the escapees which might allow them to evade capture. According to Hass's affidavit, Lopez was returned to the general inmate population after Lucas and Peach were captured and a thorough search of the jail had been undertaken.

In light of these undisputed facts, I find that the restriction of Lopez' visitation privileges and his temporary placement in segregation were reasonable actions taken in order to insure the security of the facility. As such, they fall within the scope of prison management decisions with which the Court will not interfere. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Weaver v. Jago,* 675 F.2d 116 (CA 6 1982).

Plaintiffs do not allege that Lopez was deprived of a liberty interest in visitation created by the State, or that other avenues of communication were cut off. As alleged, the denial of visitation rights for a limited period of time violated neither free speech nor due process rights. *Keenum v. Amboyer,* 558 F.Supp. 1321 (ED MI 1983). Under the circumstances, Plaintiff Mary Lou Lopez has no broader right to visitation than that of her husband, and thus her claim fails as well. *See White v. Keller,* 438 F.Supp. 110 (D Md 1977), *aff'd.* 588 F.2d 913 (CA4 1978). Nor does the placement of Lopez in segregation in and of itself invoke a liberty interest protected by the Constitution. *Bills v. Henderson,* 631 F.2d 1287 (CA6 1980). Lopez' allegations with regard to segregation and denial of visitation, as with harm to his reputation, merely go to the question of damages in the context of his claims of arrest and detention without due process.

### Liability of the Sheriff's Department

One of the named Defendants in this action is the Berrien County Sheriff's Department. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that local governing bodies such as municipalities could be sued as "persons" under § 1983. Defendants seek summary judgment in favor of this defendant on the grounds that it is not a legal entity subject to suit, and is not a "person" liable for deprivations of civil rights under § 1983.

Plaintiffs argue that in Michigan, the County Sheriff's Department is created as an entity separate from the County, and thus is suable in its own right. However, in *Bayer v. Macomb County Sheriff,* 29 Mich.App. 171, 185 N.W.2d 40 (1970), the court held that a sheriff's department was properly granted summary judgment in an action where the plaintiff alleged he had been beaten by a deputy sheriff while a prisoner. The court reasoned, "The sheriff's department, also named as a defendant, is an agency of the County. Const. 1963, art 7, § 6 relieves a county from

responsibility under the circumstances here alleged." *Id.* at 175, 185 N.W.2d 40.[6]

The Michigan Supreme Court has held that a County may be sued for the intentional torts of sheriff's *deputies*, since the immunity provided to counties in the Constitution extends only to the acts of the Sheriff. *Lockaby v. Wayne County*, 406 Mich 65, 276 N.W.2d 1 (1979). However, in *Kroes v. Smith*, 540 F.Supp. 1295 (ED Mich. 1982), the federal court concluded that "the sheriff, not the county, establishes the policies and customs described in *Monell*," and that therefore the County could not be liable for civil rights violations by sheriff's deputies.

■ I do not resolve this question here, because whether the proper party is the County, or the Sheriff's Department, Plaintiffs' Complaint makes no claim that the allegedly unconstitutional actions of Defendant Ruhl "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that the alleged deprivations were taken pursuant to a persistent and widespread custom. *Monell*, at 690–691, 98 S.Ct. at 2035–2036. The Sheriff's Department could not be held liable simply because it employed Defendant Ruhl. *Id.* at 691, 98 S.Ct. at 2036. For this reason, Defendants' motion for summary judgment as to the Berrien County Sheriff's Department is granted.

### Liability of Sheriff Jewell

Plaintiffs allege in their complaint that Defendant Jewell was directly involved in the investigation of the jail break and in the request for an arrest warrant. (Complaint, ¶¶ 10, 13, 14, 24). The Complaint contains general allegations that the Defendants knew that there was no substance to the charges brought against Lopez (Complaint, ¶¶ 13, 17, 22); it also charges that Jewell released information to the media which harmed Lopez' reputation. Defendants argue that none of these allegations give rise to liability under § 1983 on the part of the Sheriff.

The allegations of harm to Lopez' reputation have already been discussed; they do not rise to the level of a § 1983 claim in their own right. Therefore, liability on the part of Sheriff Jewell cannot be premised on this ground. And in an affidavit submitted in support of the motion for summary judgment, Defendant Jewell avers that he took no part in the investigation; rather, he attests that his only involvement was "as Sheriff of Berrien County and as general supervisor of all Berrien County Sheriff Deputies." (Aff. Jewell, ¶¶ 6, 7). Defendant Jewell cannot be held liable simply because of his supervisory status. *Monell v. New York Dept. of Social Services, supra.*

■ There is a question, however, about the extent of Jewell's knowledge of the particulars of Ruhl's investigation and actions. In his affidavit, Jewell states that his involvement in the investigation "was limited to the receipt of information provided to him by his detective personnel (including Berrien County Sheriff's Deputy Gary Ruhl) through other officers within the Berrien County Sheriff's command staff." (¶ 8). Defendant Ruhl testified at his deposition that he "conferred with [Jewell] on numerous occasions," and that Jewell was kept apprised of the status of Ruhl's investigation. (Dep, 8).

The Sixth Circuit has recently noted that direct involvement in alleged constitutional misconduct may not be required in order for a supervisory official to be held liable under § 1983; instead, negligence in failing to prevent the constitutional deprivation may suffice to support a § 1983 claim. *Brandon v. Allen*, 719 F.2d 151, 153–154 (CA6 1983).[7] In light of the need for fur-

---

**6.** The cited constitutional provision states:

The sheriff may be required by law to renew his security periodically and in default of giving such security, his office shall be vacant. *The county shall never be responsible for his acts, except that the board of supervisors may*

*protect him against claims by prisoners for unintentional injuries received while in his custody. He shall not hold any other office except in civil defense.* (Emphasis supplied).

**7.** I note that the authority cited by the Defendants predates the *Brandon* case. In fact, the

ther factual development on this issue, summary judgment cannot be granted in favor of Defendant Jewell at this time.

### Claims of Mary Lou Lopez

Aside from allegations that she was not allowed to visit her husband while he was in segregation, which are discussed above, Plaintiff Mary Lou Lopez claims that as a result of the Defendants' actions, she was denied the support and companionship of her husband. Defendants argue that these allegations fail to state a federal cause of action under § 1983. Plaintiffs contend that "Plaintiff Mary Lopez was directly and substantially affected by the actions taken by Defendants in depriving her of her constitutional right to marital privacy." (Memorandum, p 25).

Plaintiffs cite no authority for their contention that Mary Lopez' constitutional rights were violated, even assuming that Lopez prevails on his own § 1983 claim. This question was addressed by another District Court in *Walters v. Village of Oak Lawn,* 548 F.Supp. 417 (N.D.Ill.1982), which held that "the right to consortium is not within the spectrum of interests guaranteed by the Constitution or federal law." 548 F.Supp. at 419. In *Sell v. Price,* 527 F.Supp. 114 (S.D.Ohio 1981), the Court rejected a similar claim under an invasion of privacy theory. While Plaintiff Mary Lopez may have some state tort claim, she has not stated a claim for relief under § 1983. Therefore, Defendants' motion for summary judgment is granted as against Mary Lopez.

---

*Brandon* court expressly questioned its earlier holding in *Hays v. Jefferson County,* 668 F.2d 869 (1982), since that case was decided without

the benefit of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). 719 F.2d at 154.